ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Green Bay Logistic Services Co. ) ASBCA No. 61063
)
Under Contract No. H92237-16-C-0030 )

APPEARANCE FOR THE APPELLANT: Mr. Mohammad Nazar
Vice President

APPEARANCES FOR THE GOVERNMENT: E. Michael Chiaparas, Esq.
DCMA Chief Trial Attorney
Michael T. Patterson, Esq.
Trial Attorney
Defense Contract Management Agency
Chantilly, VA

OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT

This is an appeal from a termination for convenience by the Defense Contract Management Agency (DCMA or government) of commercial items Contract No. H92237-16-C-0030 (the contract) with Green Bay Logistic Services Co. (Green Bay or appellant) for the lease of two stakebed or flatbed trucks for six months at Bagram Airfield, Afghanistan, at a total price of $22,440. Green Bay claims it is owed $46,800 for attempting to deliver vehicles twice. We deny the appeal.

FINDINGS OF FACT

1. On 1 June 2016, the government awarded the contract to Green Bay to lease two flatbed or stakebed diesel trucks that were 17 to 19 feet in length, 8 feet 11 inches to 9 feet 7 inches in width, and 7 to 8 feet in height. DCMA further required that the vehicles be able to be transported via C-130J and be able to carry up to 20,000 pounds of fuel blivets, fuel, and equipment. (R4, tab 2 at G-32) Green Bay proposed an amount of $22,400, which was the amount of the awarded contract (R4, tab 3 at G-39).

2. The contract required that "[t]he Contractor shall provide vehicles that are less than three (3) years old (based on vehicle model year) and have less than 75,000KM on the odometer" (R4, tab 3 at G-32). This meant that to be in compliance with the contract terms, the vehicles must have been at least vehicle model years 2014-2016.

3. The contract included, by reference, Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (MAY 2015) (R4, tab 1 at G-11), which contains the following relevant portions:

> (a) *Inspection/Acceptance*. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming services at no increase in contract price....

> ....

> (l) *Termination for the Government's convenience*. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, *the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government* using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided. [Emphasis added]

4. On 7 June 2016, Green Bay leased two, model year 2000, Mercedes trucks from Ghourband Europe Logistics Services Company, for which it paid $19,800 for a non-refundable six-month lease (R4, tab 9 at G-58-59). On 8 June 2016, Green Bay had stakebeds installed on the trucks for which they paid $7,800 (R4, tab 9 at G-60).

5. On 8 June 2016, Green Bay delivered photographs of the trucks to the contracting officer's representative (COR). On 30 June 2016, the COR rejected the

2

trucks for not complying with the contract because the vehicles were more than three model years old* (R4, tab 12 at G-75).

6. On 1 July 2016, Green Bay leased a 1989 Mercedes truck and a 1996 Mercedes truck from Massoud Marzi Seller & Rental Motors Company via another non-refundable six-month lease for $19,200 (R4, tab 9 at G-61-62).

7. On 11 July 2016, Green Bay submitted an invoice for one month's payment in the amount of $3,740, covering the period of 1 June 2016 through 30 June 2016 (R4, tab 4 at G-48). The government paid this invoice without explaining why it paid for non-conforming goods or for goods that were not actually delivered (R4, tab 12 at G-76).

8. On 14 July 2016, the contracting officer issued a stop-work order on the contract (R4, tab 9 at G-50).

9. On 24 July 2016, the contracting officer provided notice that it was terminating the contract for convenience, effective on 25 July 2016 (R4, tab 9 at G-51-53).

10. On 10 December 2016, Green Bay submitted its settlement proposal. It claimed $19,200.00 for "PAID in advance for 6 months, Receipt paid in 7/1/2016 with customer ID 145." Green Bay claimed $7,800 to "Repair and fix the Vehicle per US Government repres[e]ntative changes." Finally, Green Bay claimed $19,800 for "PAID in adv[an]ce for 6 months to Ghourband Europe Logistic Services co on Date 6/7/2016." (R4, tab 10 at G-67)

11. On 13 February 2017, the termination contracting officer (TCO) responded to Green Bay's settlement proposal. The TCO noted that the government had paid Green Bay $3,740.00 and allowed Green Bay to keep that amount. However, the TCO determined that Green Bay was not entitled to any further compensation because its "percent of completion for this contract is 0%." The TCO further stated, "G[reen Bay] did not comply with the terms and conditions of the contract or the Performance Work Statement (PWS). G[reen Bay] failed to meet the requirement that the leased trucks be no more than three (3) years old." Further, the TCO quoted Page 3, Section E of the contract when it informed Green Bay that the contract specified that acceptance would be at

---

* In its opening brief, the government also stated that the vehicles exceeded the height requirements (gov't br. at 3). However, this assertion is not supported by the record, other than in the contracting officer's final decision. Based on the blatant non-compliance with the contract based on the age of the vehicles, which is supported in the record, it is unnecessary to analyze the impact that the height of the vehicles might have had on the appeal or address the adequacy of the record regarding the height requirements.

destination and that the government retained "the right to inspect, reject, or terminate any items or services that do not meet required specifications." (R4, tab 11 at G-68)

12. On 15 February 2017, DCMA sent another letter to Green Bay, this time signed by the director, DCMA Terminations Group. This letter informed Green Bay in more detail why it was not entitled to recovery. DCMA analyzed a "two-pronged formula consisting of 'a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate...have resulted from the termination.'" (R4, tab 12 at G-72 (citing 48 C.F.R. § 52.212-4(l)))

13. In the 15 February 2017 letter, DCMA outlined the events demonstrating that, while Green Bay entered into non-refundable six-month leases, it did so on trucks that were more than three years old which violated the term of the contract that required the trucks be less than three years old. Further, the contract called for trucks that were 7 to 8 feet in height but the trucks that were delivered were over 11 feet tall. Therefore, DCMA determined that the contract was 0 percent complete. This meant Green Bay was entitled to nothing under the first prong of the analysis. (R4, tab 12 at G-75-76)

14. Concerning the second prong of the analysis, DCMA noted that Green Bay was entitled to "'reasonable charges' resulting from termination" but that Green Bay only submitted costs for the trucks it attempted to deliver. Green Bay did not propose any settlement expenses. (R4, tab 12 at G-76)

15. Green Bay timely appealed the TCO's decision. This appeal was docketed as ASBCA No. 61063. On 7 July 2017, the government requested to adjudicate the appeal on the written record pursuant to Board Rule 11. Despite several attempts from the Board to discern Green Bay's position on how to proceed, Green Bay did not submit a response that addressed the issue. Accordingly, on 10 August 2017, the Board set the briefing schedule under Board Rule 11.

16. DCMA submitted its opening brief on 9 November 2017, in compliance with the Board's 10 August 2017 order.

17. The Board did not receive an opening brief from Green Bay. On 24 November 2017, the Board allowed Green Bay additional time to submit its opening brief. The Board warned Green Bay that failure to submit an opening brief would mean that the Board would decide the case on the record it had, including the government's brief, and that Green Bay would not have an opportunity to respond to the government's brief. Green Bay still did not respond or file an opening brief. As of the date of this decision, we have not received any further communication from Green Bay.

4

## DECISION

This appeal concerns the termination for convenience of a contract where the contractor failed to comply with the terms of the contract prior to the government's notification of the termination for convenience. "A contractor bears the burden of proving by a preponderance of the evidence that it is entitled to a greater termination settlement amount than that determined by the TCO." *SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,225 (citing *General Dynamics Land Sys.*, ASBCA No. 52283, 02-1 BCA ¶ 31,659 at 156,411; *Unified Eng'g, Inc.*, ASBCA No. 21565, 81-1 BCA ¶ 14,940 at 73,936).

Upon a termination for convenience, FAR 52.212-4(l) directs the government to pay contractors: (1) "a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination"; and (2) "reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination." *SWR*, 15-1 BCA ¶ 35,832 at 175,221. Here, Green Bay failed to prove that it is entitled to any amount it presented to the government in its termination settlement proposal.

For the first prong of the analysis, Green Bay would have been entitled to "a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination" had it performed any percentage of the work. Green Bay is not entitled to recover any monetary amount, however, because it did not complete any percentage of the contract. The vehicles Green Bay delivered or attempted to deliver did not comply with the contract and were rejected by the government. (Findings 4-6) The contract clearly required vehicles that were "less than three (3) years old (based on vehicle model year)" which would require the vehicles to be model year 2014 or newer (finding 2). Yet, Green Bay first delivered photographs of vehicles that were model year 2000, 14 model years older than required by the contract (findings 4-5).

In an attempt to correct this problem, Green Bay leased different non-compliant trucks, this time even older. Instead of leasing newer model year vehicles, Green Bay leased vehicles with the model years 1989 and 1996. (Finding 6)

The government properly declined acceptance of both attempts to deliver non-compliant vehicles (findings 5, 8). Green Bay never attempted to deliver compliant vehicles. The government's determination that Green Bay completed zero percent of the contract was accurate. Thus, Green Bay is not entitled to recovery under the first prong of the analysis.

For the second prong of the analysis, Green Bay did not present any "reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination." We have

previously held that this second prong "refers to the recovery of those charges incurred that do not relate to work completed but should be reimbursed to fairly compensate the contractor whose contract has been terminated." *SWR,* 15-1 BCA ¶ 35,832 at 175,223 (original quotations omitted). Green Bay solely provided costs for leasing the vehicles it intended to use to perform the contract. Because Green Bay did not submit any amounts not related to the work completed, it cannot recover any charges under the second prong.

Had Green Bay submitted an opening brief, it might have argued that the payments it made for the various leased vehicles should be analyzed under the second prong of the analysis. Even if we review the claimed amount under the second prong, we cannot agree that entering multiple non-reimbursable lease agreements for non-compliant vehicles were reasonable charges that imposed upon the government a requirement to pay. As stated above, Green Bay presented invoices to the government that demonstrated payment for two separate non-reimbursable leases, arguing that because it made payments for the leases that it was entitled to recover those amounts (finding 10). Even if Green Bay paid for the two separate non-reimbursable leases, the vehicles never complied with the contract and, therefore, are not reasonable charges. Indeed, the leases that Green Bay provided to the TCO demonstrate that the vehicles did not comply with the contract because the vehicles were more than three years old (findings 4, 6). Thus, Green Bay still cannot recover under the second prong.

Accordingly, Green Bay failed to meet its burden of proving by a preponderance of the evidence that it is entitled to a greater termination settlement amount than that determined by the TCO.

## CONCLUSION

We deny the appeal.

Dated: 12 April 2018

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

6

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61063, Appeal of Green Bay Logistic Services Co., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals